IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

STEVEN KURT BAUGHMAN,            )
                                 )
           Plaintiff,            )
                                 )
vs.                              )     No. CIV-02-896-T
                                 )
RON WARD, et al.,                )
                                 )
           Defendants.           )

**REPORT AND RECOMMENDATION**

Plaintiff, a state prisoner appearing pro se, initiated this action pursuant to 42 U.S.C. § 1983 alleging various violations of his constitutional rights occurring during his incarceration at the Lawton Correctional Facility (LCF). On April 10, 2003, Defendants Poppell, Atwood, Gregston, and Fogle filed a motion for summary judgment.[1] Plaintiff has filed a response,[2] to which Defendants replied and Plaintiff likewise filed a surreply. Thus, the matter is at issue. Pursuant to an order entered by United States District Judge Ralph G. Thompson, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned recommends that Defendants' motion be granted.

In his twelfth, seventeenth, eighteenth, nineteenth, and twentieth causes of action, Plaintiff alleges various violations of his constitutional rights by Defendants Dayton J. Poppell, warden; Sandy Atwood, facility medical administrator; J.L. Gregston, M.D.; Mark

---

[1]Though styled solely as a motion for summary judgment, Defendants also seek dismissal of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). The undersigned has thus construed the motion as both one to dismiss and for summary judgment.

[2]In his response, Plaintiff states that his response should be considered together with his Declaration of Facts in Opposition to Defendants' Motion for Summary Judgment/Motion to Dismiss (Plaintiff's Declaration). [Doc. No. 70].

Fogle, M.D; and Defendant Doe.[3] In the twelfth cause of action, Plaintiff alleges that all four Defendants denied him access to an orthopedic specialist. First Amended Complaint, p. 17. In the seventeenth cause of action, Plaintiff claims that Defendants Poppell and Atwood manipulated the grievance process in violation of his First and Fourteenth Amendment rights. First Amended Complaint, p. 19. In the eighteenth cause of action, Plaintiff alleges that all four Defendants interfered with prescribed medical treatment in violation of his Eighth and Fourteenth Amendment rights. First Amended Complaint, p. 19. In his nineteenth and twentieth causes of action, Plaintiff claims that Defendant Poppell failed to promulgate uniform procedures for private and state-operated prisons in violation of his right to equal protection under the Fourteenth Amendment. First Amended Complaint, p. 20.

## I. UNDISPUTED FACTS

The undersigned has thoroughly reviewed the evidentiary materials submitted by both Plaintiff and Defendants, and finds that the following facts are undisputed.[4]

Plaintiff is serving a sentence for the attempted murder of two police officers.[5] DOC Special Report, Att. A, p. 1. From August 13, 1998, to April 12, 2002, Plaintiff was

---

[3] In his complaint, Plaintiff also asserts claims against prison officials at Dick Conner Correctional Center (DCCC) arising from his incarceration in that facility. The Defendants implicated in those claims have filed a separate dispositive motion for which the undersigned has issued an additional Report and Recommendation.

[4] Some facts come from the special report filed by the Oklahoma Department of Corrections (DOC Special Report), and others from that filed by the Lawton Correctional Facility (LCF Special Report). Consideration of both special reports is proper because a court-ordered special report is treated like an affidavit. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

[5] Plaintiff is an interstate compact prisoner from Texas, and was received into the custody of the Oklahoma Department of Corrections in 1992.

incarcerated at Dick Conner Correctional Facility. Id. On April 12, 2002, Plaintiff was transferred to the Lawton Correctional Facility (LCF). Id. On February 28, 2002, Plaintiff injured his foot by kicking the end of his bunk while he was sleeping at Dick Conner Correctional Center, but he did not seek any medical attention. Plaintiff's Declaration, Ex. A. ¶ 3-4. On March 1, 2002, Plaintiff borrowed a pair of crutches belonging to another inmate. Id. at ¶ 7-8. As Plaintiff did not report his injury, no crutches were prescribed to him by Dick Conner medical services. DOC Special Report, Att. A. On March 6, 2002, Plaintiff was using the crutches to descend a six-step stairway at Dick Conner when he fell. Plaintiff's Declaration, ¶ 10-12. As a result of this fall, Plaintiff fractured his left elbow, and received medical care and medical consultation from both the Dick Conner Correctional Facility and outside providers. DOC Special Report, Att. R; DOC Special Report, Att. FF; DOC Special Report, Att. HH; DOC Special Report, Att. JJ. On April 2, 2002, the orthopedic consultant at Oklahoma University Medical Center (OUMC) requested the medical staff at Dick Conner Correctional Facility to provide Plaintiff's x-rays and progress notes, and they were sent by transport that day. DOC Special Report, Att. R, p. 8. On April 10, 2002, Dick Conner medical staff was informed that Dr. Sparks at OUMC found Plaintiff's arm to be inoperable but in good position and that "he just needs to start moving his elbow. . . ." DOC Special Report, Att. JJ, p. 1. Dr. Sparks noted that there was no need for further intervention. Id. at 2.

On March 20, 2002, Dick Conner Correctional Center recommended Plaintiff for a priority administrative transfer. DOC Special Report, Att. KK, p. 1. Plaintiff's facility classification committee concurred. Id. Plaintiff's security level was to remain at high-

medium to medium. Id. Plaintiff was transferred on April 12, 2002. DOC Special Report, Att. A, p. 1.

While at Dick Conner Correctional Facility, Plaintiff was found to have abused and misused the grievance process by submitting multiple requests to staff and grievances over the same or previously addressed issues. DOC Special Report, Att. LL, ¶ 3. Plaintiff failed to give staff an appropriate amount of time to respond before submitting additional grievances over the same issue, and Plaintiff harassed and threatened staff. Id. at ¶ 3-4. While still at Dick Conner, Plaintiff made six requests to staff from March 7, 2002, to March 18, 2002. DOC Special Report, Att. B, p. 3; Att. E, p. 3; Att. F, p. 4; Att. G, p. 5; Att. H, p. 4; Att. I, p. 2; Att. J, p. 4; and Att. K, p. 3. Plaintiff was placed on a one-year grievance restriction on April 10, 2002. DOC Special Report, Att. Q, p. 7. DOC policy allows for restriction of the grievance process when abuse is found. LCF Special Report, Ex. F, § IX. Once a grievance restriction is imposed, an inmate must submit an affidavit with any grievance stating that it is made under penalty of discipline for lying to staff, that the contents are true and correct to the best of the inmate's knowledge and belief, and listing all previous grievances submitted within the last twelve months. Id. at § IX(B)(2)(a).

Upon Plaintiff's arrival at LCF, his prescription for Lortab was discontinued, and he was instead prescribed Darvocet for pain. LCF Special Report, Exs. G and H. On June 13, 2002, Defendant Poppell extended Plaintiff's grievance restriction for failure to follow the rules for use of the grievance procedure. LCF Special Report, Ex. E.

## II. GOVERNING STANDARDS

### A. Summary Judgment

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. Oklahoma, 875 F.2d 263, 264 (10th Cir. 1989). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rather, the moving party initially bears the burden only of " 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id., at 325. Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324. The nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement. Anderson, 477 U.S. at 256. Rather, Fed. R. Civ. P. 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.

**B. Motion to Dismiss**

Dismissal of a cause of action under Fed.R.Civ.P. 12(b)(6) is proper only if "it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." Roman v. Cessna Aircraft Co., 55 F.3d 542, 543 (10th Cir. 1995); Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991). The well-pleaded factual allegations of the complaint must be accepted as true and construed in the light most favorable to the plaintiff. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991).

**III. ANALYSIS**

    **A. Exhaustion of Administrative Remedies**

The undersigned will first address Defendants' contention that Plaintiff has failed to exhaust his administrative remedies. Prior to filing a civil action, a prisoner challenging the conditions of his confinement must first exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) which provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The exhaustion requirement has been interpreted by the Supreme Court to require exhaustion of administrative remedies regardless of the remedy sought by the prisoner. Booth v. Churner, 532 U.S. 731, 741 (2001); Yousef v. Reno, 254 F.3d 1214, 1221-22 (10th Cir. 2001). Furthermore, failure to take advantage of the prison system's entire appellate process is fatal. Kikumura v. Hurley, 242 F.3d 950, 956 (10th Cir. 2001) ("A litigant's failure to raise issues during an administrative appeal can constitute a failure to exhaust administrative remedies."); see also Booth, 532 U.S. at 735 (affirming dismissal of complaint because of plaintiff's "failure to avail himself of the later stages of the administrative process").

Plaintiff contends that the burden to prove exhaustion is that of the Defendants. However, the Tenth Circuit Court of Appeals recently held that § 1997e(a) places the burden on the prisoner to demonstrate administrative exhaustion in his complaint. Steele v. Fed. Bur. of Prisons, 355 F.3d 1204, 1209 (10th Cir. 2003). The Court concluded that in order to satisfy this burden, a prisoner must

> [A]ttach[] a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.

Id. at 1210 (internal quotations omitted). It is clear that Plaintiff's complaint does not meet this requirement as he includes little, if any, reference to the grievance procedures in relation to his claims against these Defendants. Although he has supplemented this information through his declaration, response, and reply, it is still unclear if and to what extent he has exhausted his administrative remedies. However, it is not unnecessary to resolve that issue as Plaintiff's claims against these Defendants should fail on the merits.

7

### B.     Medical Treatment (Twelfth and Eighteenth Causes of Action)

As noted above, Plaintiff injured his foot on February 28, 2002, by kicking the end of his bunk while he was sleeping at Dick Conner Correctional Center, but he did not seek any medical attention.  Plaintiff's Declaration, Ex. A. ¶ 3-4. On March 1, 2002, Plaintiff borrowed a pair of crutches belonging to another inmate.  Id. at ¶ 7-8.  As Plaintiff did not report his injury, no crutches were prescribed to him by Dick Conner medical services. DOC Special Report, Att. A.  Plaintiff fell on March 6, 2002, and sustained injury to his left arm and foot during his incarceration at Dick Conner Correctional Center. In his eighteenth cause of action, Plaintiff asserts Eighth Amendment claims against Defendants Atwood, Fogle, Gregston, Poppell and Doe based on his allegation that upon arriving at LCF, he was denied pain medication.  Following his fall, the medical staff at Dick Conner prescribed Lortab for pain. DOC Special Report, Att. R, p. 7.  Plaintiff claims that upon his arrival at LCF, Defendant Fogle discontinued this medication, denying him pain medication.  In his declaration, Plaintiff also states that Defendant Gregston told Plaintiff that "he could not allow [P]laintiff to receive the medication prescribed to him by the DOC physicians and the Hospital, due to WCC-LCF rules, and the best he could do for Plaintiff would be to prescribe 500 mg Tylanol [sic] and 25 mg Indonethasin; where Plaintiff had been prescribed 10 mg Lartab [sic] 3 x per day and 75 mg Indonethasin 2 x per day."  See Plaintiff's Declaration, p. 19, ¶ 156.  Plaintiff claims that denial of his previous pain medication violated his rights under the Eighth Amendment.

The Eighth Amendment prohibits prison officials from displaying deliberate indifference to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97,

104-105 (1976); see also White v. Colorado., 157 F.3d 1226, 1233-34 (10th Cir. 1998) (deliberate indifference to a prisoner's medical needs is a violation of the Eighth Amendment). "The two-pronged Estelle standard 'requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious.'" Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) (quoting West v. Keve, 571 F.2d 158, 161 (3rd Cir. 1978)). Under Estelle, a medical need is "serious" if a physician has diagnosed it as requiring treatment or if, upon seeing it, a lay person would recognize the need for a doctor's attention. Ramos, 639 F.2d at 575. "Deliberate indifference" to serious medical needs "is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." Id. Significantly, a mere disagreement with the medical staff or allegations that a prescribed treatment was improper will not support an Eighth Amendment claim. See Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993).

Here, the undisputed facts show that the Plaintiff's prescription for Lortab was discontinued because LCF does not carry that particular type of pain medication. LCF Special Report, Ex. H. Instead, LCF medical officials provided Plaintiff with Darvocet, an alternative pain medication, ordering it the day that Plaintiff arrived. See LCF Special Report, Exs. G & H. Plaintiff never alleges nor shows that he was not provided with Darvocet, only that he no longer received Lortab. As Defendants accurately point out, a disagreement with medical staff does not rise to the level of a constitutional violation. See Johnson v. Stephan, 6 F.3d 691, 692 (10th Cir. 1993) ("As the district court noted, [the plaintiff]'s complaint [that a prescribed treatment was improper] amounts to a difference

9

of opinion with the medical staff, which does not rise to the level of a constitutional violation."). Accordingly, Defendants Atwood, Fogle, Gregston, and Poppell are entitled to summary judgment on this claim.[6]

In his twelfth cause of action, Plaintiff claims that these same Defendants interfered with prescribed medical treatment by denying him an orthopedic consultation which had been recommended by a previous physician. However, the undisputed facts show that Plaintiff received the recommended orthopedic consultation immediately prior to his arrival at LCF. See DOC Special Report, Att. AA, pp. 1-2; LCF Special Report, Ex. A. Orthopedic consultant Dr. Sparks concluded that Plaintiff's elbow was "minimally displaced. No need for further intervention." Id. Dr. Sparks further indicated that "he just needs to start moving his elbow. . . ." Id.

Plaintiff argues that compliance with the previous recommendation required a physical examination by an orthopedist rather than a consultative opinion based upon a review of Plaintiff's x-rays and other medical records. However, as noted above, the Constitution does not guarantee a prisoner the medical treatment of his choice. Johnson,

---

[6]Plaintiff has yet to identify or obtain service upon Defendant Doe. Although he has filed a motion for service of process on John Doe Defendant in which he identifies him as Steve Moles, it appears from the allegations in the complaint that there is more than one Doe Defendant. Regardless, Plaintiff is required to serve each Defendant with a summons and a copy of the complaint within 120 days after filing the action. Fed. R. Civ. P. 4. Otherwise, the Court may sua sponte or on motion dismiss the action without prejudice. Fed. R. Civ. P. 4(m). The Court may in its discretion extend the time in which a plaintiff can effect service, Espinoza v. United States, 52 F.3d 838, 841-42 (10th Cir. 1995), however, Plaintiff has failed to establish a violation of constitutional rights. Therefore, it would not serve any purpose to extend the time to serve the Doe Defendants. Accordingly, this claim against Defendant Doe(s) should be dismissed pursuant to Fed. R. Civ. P. 4(m).

6 F.3d at 692. Accordingly, Defendants Gregston, Fogle, Atwood and Poppell are entitled to summary judgment on this claim.[7]

### C.    Grievance Restriction (Seventeenth Cause of Action)

In his seventeenth cause of action, Plaintiff alleges that his rights under the First and Fourteenth Amendments were violated when Defendants Poppell and Atwood interfered with the grievance process. It is undisputed that just before Plaintiff's transfer to LCF, Defendant Guilfoyle placed him on grievance restriction based on his abuse of the grievance process.[8] While at LCF, Defendant Poppell extended Plaintiff's grievance restriction for an additional year as a result of his continued failure to follow the grievance restriction procedures. See LCF Special Report, Att. E.

The right of access to the courts is encompassed in the rights afforded by the First and Fourteenth Amendments, Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990), and the Tenth Circuit has recognized that because a prisoner must first file a grievance in order to ultimately gain access to the courts, punishing him for grievances may state a First Amendment claim. Id.; See also Gwinn v. Awmiller, 354 F.3d 1211, 1228 (10th Cir. 2004). It is undisputed that Defendant Poppell placed Plaintiff on a grievance restriction. However, such a restriction does not result in a blanket prohibition against an inmate's ability to file grievances, but rather requires him to take certain procedural steps in filing his grievance. See Inmate/Offender Grievance Process, OP-090124 IX(B)(2)

---

[7] As noted above, Defendant Doe is entitled to dismissal under Fed.R.Civ.P. 4(m).

[8] Plaintiff's claims against Defendant Guilfoyle for implementation of the first grievance restriction are addressed in a separate Report and Recommendation.

<http://www.doc.state.ok. us/offtech/op090124.htm> (accessed February 3, 2004); see also LCF Special Report, Ex. F. Thus, the grievance restriction did not bar Plaintiff from pursuing issues through the grievance process and, therefore, did not restrict his right of access to the courts.

Moreover, to the extent Plaintiff claims that the grievance restriction standing alone violated his First Amendment rights, his claim likewise fails. The Supreme Court has held, "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). In so holding, the Court explained:

> In our view, such a standard is necessary if prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations. Subjecting day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decision making process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration.

Id. (internal quotations and citations omitted).

The grievance process is intended to be a standard by which inmates may seek formal administrative decisions or answers to issues or complaints. See Inmate/Offender Grievance Process, OP-090124 <http://www.doc.state.ok.us/offtech/ op090124.htm> (accessed February 3, 2004); see also LCF Special Report, Att. F. This purpose cannot be served efficiently or effectively if it is abused by inmates who file frivolous grievances,

who do not allow officials time to respond, or who raise non-grievable issues. See Inmate/Offender Grievance Process, OP-090124 IX(A)(1) <http://www.doc.state.ok.us/offtech/op090124.htm> (accessed February 3, 2004); see also LCF Special Report, Att. F.

Analogously, the Tenth Circuit Court of Appeals has upheld filing restrictions on abusive litigants. In Cotner v. Hopkins, 795 F.2d 900, 902 (10th Cir. 1986), the Court recognized the "strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances. ... [E]ven onerous conditions may be imposed upon a litigant as long as they are designed to assist the district court in curbing the particular abusive behavior involved." (internal quotations omitted). See also Shabazz v. Cody, No. 96-6092, 1996 WL 425651, at *1 (10th Cir. July 30, 1996) (upholding preconditions to filing as "clearly the type of carefully tailored restrictions contemplated by the various courts that have addressed the question of restraints on abusive litigants.");[9] Tripati v. Beaman, 878 F.2d 351, 353 (10th Cir. 1989) (affirming application of preconditions to filing where litigant has firmly established abusive history). Applying this same rationale to the grievance restriction policy here, the undersigned finds that when the restriction is applied following a determination that an inmate has indeed abused the grievance process, such restrictions do not impinge on constitutional rights. Thus, a policy allowing grievance restriction following a determination that an inmate has abused the process is

---

[9]This and any other unpublished disposition cited herein as persuasive authority pursuant to Tenth Circuit Rule 36.3.

reasonably related to a legitimate penological interest. Hence, the policy itself is constitutional.

Plaintiff has also failed to show that a grievance restriction was not related to a legitimate penological interest as applied to him, as he frequently participated in conduct similar if not identical to that described in the policy. See DOC Special Report, Atts. B-O; Plaintiff's Declaration, Ex. U, V, W, X. Plaintiff has come forward with no evidence warranting this Court in second-guessing Defendants' conclusion that Plaintiff had abused the grievance process. The First Amendment guarantees a right to utilize the grievance system, but not the right to abuse it. Accordingly, Defendants Poppell and Atwood[10] are entitled to summary judgment of Plaintiff's claim.

### D.     LCF's Policies and Procedures (Nineteenth and Twentieth Causes of Action)

In his nineteenth and twentieth causes of action, Plaintiff claims that Defendants Poppell and Doe failed to promulgate uniform rules, policies and procedures, in violation of his rights to equal protection under the Fourteenth Amendment. "The Equal Protection Clause requires the government to treat similarly situated people alike." Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  If a prisoner does not allege different treatment based on a suspect classification, he must establish that the distinction was not reasonably related to a legitimate penological purpose. Templeman v. Gunter, 16 F.3d 367, 371 (10th Cir. 1994) (citing Turner, 482 U.S. at 89).

---

[10]Defendant Atwood is also entitled to summary judgment on the grounds that Plaintiff has failed to show any personal participation in the incidents forming the basis of his claim in the seventeenth cause of action. See Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993) (defendant cannot be liable under § 1983 unless personally involved in  alleged constitutional deprivation); Gates v. Unified School Dist., 996 F.2d 1035, 1042 (10th Cir. 1993) ("claim seeking personal liability in a civil rights suit must be predicated on the defendant actor's personal involvement").

In his statement of facts that correspond with this claim, he argues that prisoners in state run facilities receive more favorable job assignments, program availability, outdoor access, facility television, canteen prices, mail procedures, behavioral rules, visitation policy, meals and dental care. However, Plaintiff has failed to make a threshold showing that any differences between the rules in private and state-owned facilities are not supported by a legitimate penological interest.

In considering a similar claim, the Eighth Circuit recently explored the nonfeasibility of such inter-prison comparisons in the equal protection context:

> Programming decisions regarding industry and education differ[] from prison to prison, "depending on innumerable variables that officials must take into account" and not on illegitimate, discriminatory factors.
> ...
> In determining the availability and location of prison programs and services, officials "must balance many considerations, ranging from the characteristics of the inmates at that prison to the size of the institution, to determine the optimal mix of programs and services." ... The size of the institution, its location, and the types of inmates housed there necessarily will affect the number, type, and length of programs offered."
> ...
> [U]sing an inter-prison program comparison to analyze equal protection claims improperly assumes that the Constitution requires all prisons to have similar program priorities and to allocate resources similarly."[I]nter-prison program comparison "results in precisely the type of federal court interference with and 'micro-management' of prisons that Turner[11] condemned."

Keevan v. Smith  100 F.3d 644, 648-650 (8th Cir. 1996) (citations omitted) (quoting Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir.1994). Citing Keevan, the Tenth Circuit noted that an equal process analysis "requires consideration of a number

---

[11]Turner v. Safley, 482 U.S. 78, 84-85 (1987) (prison officials have wide discretion to determine measures to be taken to preserve order and security in a detention facility).

of factors, including the size of the prison populations in the facilities to be compared, the average length of sentences the inmates are serving, the inmates' security classifications, the types of crimes for which the inmates have been incarcerated, and any special characteristics." Marsh v. Newton No. 97-2157, 1998 WL 39235, at *3 (10th Cir. Jan. 30, 1998).

Here, Plaintiff has not submitted any evidence comparing the factors relevant to a determination of whether the inmate populations at other institutions are similarly situated to him. Therefore, Defendant Poppell is entitled to summary judgment on this claim.[12]

### E.   Conspiracy Claim (Seventeenth Cause of Action)

Plaintiff has alleged a conspiracy between numerous Defendants including Defendants Poppell and Atwood to deny Plaintiff the opportunity to legitimately utilize the grievance process, thereby hindering his right of access to the courts. Allegations of conspiracy may form the basis of a § 1983 claim. See Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). However, a conspiracy claim presupposes the deprivation of a federally protected right. See Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir. 1990) ("[W]e join those courts which have recognized that to recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be

---

[12]This claim against Defendant Doe(s) should be dismissed pursuant to Fed. R. Civ. P. 4(m).

16

insufficient."). Plaintiff has also asserted conspiracy claims under 42 U.S.C. § 1985, although the precise provision upon which he intends to rely is unclear.[13]

Plaintiff's conspiracy theories have two significant shortcomings. First, he has not alleged any specific facts reflecting an agreement or concerted action between two or more Defendants. Second, Plaintiff has not shown the deprivation of a federally protected right. Thus, Plaintiff's conspiracy claims cannot survive summary judgment. See Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989) ("Because plaintiff failed to allege specific facts showing agreement and concerted action among defendants, the district court properly dismissed the conspiracy claim with prejudice."). For both reasons then, Defendant Poppell and Atwood's motion for summary judgment as to Plaintiff's conspiracy claim should be granted.[14]

### F. State Law Claims (Twelfth, Seventeenth, Nineteenth, and Twentieth Causes of Action)

Plaintiff has also asserted state law claims for intentional infliction of emotional distress, medical malpractice, and negligence. In addition, he alleges violations of the Oklahoma Constitution and numerous state statutes. The undersigned recommends that these claims be dismissed without prejudice. Although the Court does have discretion to exercise supplemental jurisdiction under 28 U.S.C. § 1367, the Supreme Court has

---

[13]Plaintiff also purports to bring related claims under 18 U.S.C. §§ 241, 1501, however, the undersigned notes that each of these statutes are federal criminal law provisions and do not give rise to civil actions. Defendants did not address either of these statutes in their dispositive motion but the undersigned recommends that they be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

[14]Plaintiff also makes vague reference to asserting a related claim under 42 U.S.C. § 1986 with relation to his conspiracy theories. However, a § 1986 claim is dependent upon a valid claim under § 1985, see Brown v. Reardon, 770 F.2d 896, 907 (10th Cir. 1985), and therefore, Defendants' motion to dismiss should be granted with respect to this claim as well. Also, to the extent a conspiracy claim is asserted against Defendant Doe, it should be dismissed pursuant to Fed.R.Civ.P. 4(m).

suggested that lower courts decline to exercise such jurisdiction when the federal claims are dismissed at an early stage in the proceedings. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"); see generally 28 U.S.C. §1367(c)(3) (stating that "supplemental jurisdiction" may be declined if "the district court has dismissed all claims over which it has original jurisdiction"). Accordingly, the undersigned recommends that Plaintiff's state law claims be dismissed without prejudice for lack of jurisdiction.

## **RECOMMENDATION**

Based upon the above, it is recommended that Defendants' motion for summary judgment [Doc. No. 51] be granted as set forth above and that judgment be entered in their favor and against Plaintiff on all of his federal claims. In addition, the undersigned recommends that the claims against the John Doe Defendant(s) be dismissed pursuant to Fed. R Civ. P. 4(m). Lastly, the undersigned recommends that certain federal claims as specified in the body of this Report and Recommendation be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and that his state claims be dismissed without prejudice. The parties are advised of their right to file an objection with the Clerk of this Court on or before March 17, 2004, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and

Recommendation in conjunction with the separate Report and Recommendation entered herein disposes of all issues referred to the undersigned Magistrate Judge in the above captioned matter.

**ENTERED this 2nd day of March, 2004.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE